**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Criminal No. 1:21-cr-00271-EGS-2 |
| v. | : | |
| | : | |
| DIANA SANTOS-SMITH | : | Honorable Emmet G. Sullivan |

**DEFENDANT'S SENTENCING MEMORANDUM**

On September 28, 2021, Defendant Diana Santos-Smith entered a guilty plea before this Court to Demonstrating or Picketing in a Capitol Building, in violation of 40 USC 5104(e)(2)(G). She will appear before this Court on May 26, 2022 for sentencing.

This memorandum in aid of sentencing is respectfully submitted through her counsel.

**I. PRELIMINARY STATEMENT**

As the sentencing of Diana Smith, a former Hospice Care Aide, approaches, one is left to ponder what led to the criminal act underlying this prosecution, and what sentence is appropriate for this woman who, at the time of the offense, had no criminal history but had a passion for caring for the infirm and suffering patients at the threshold of death.

January 6, 2021 began early for Smith.  Enticed to travel to Washington, D.C. by serial lies concerning a "stolen election" emanating from the President of the United States, Smith left her town (a rural Pennsylvania community with a population under 4,000) to see and participate in a peaceful rally planned in Washington in support of Donald Trump.  Fueled by a barrage of false claims of "stolen votes" by the President, which were parroted by political sycophants and a slew of media pundits, Smith intended to be merely a presence in the Capitol and peacefully provide support by her mere attendance.  This began for her as an act that has been engaged in by millions of citizens from all spectrums of the political landscape during our Republic's history.

1

As we know, others had more in plan and converted the rally into an invasion into the sanctity of the Capitol Building. Stoked by the President who called the election "rigged" and his "election victory stolen", Trump whipped up his supporters:

> We fight like hell. And if you don't fight like hell, you're not going to have a country anymore," … Now, it is up to Congress to confront this egregious assault on our democracy. And after this, ***we're going to walk down, and I'll be there with you, we're going to walk down, we're going to walk down.*** … you'll never take back our country with weakness. You have to show strength and you have to be strong. We have come to demand that Congress do the right thing and only count the electors who have been lawfully slated ….

President Donald Trump's remarks on the Ellipse on January 6, 2021.

Smith shortly thereafter watched from a distance as protestors streamed towards Capitol Hill. Unknown by her at that time, mean and vile spirited individuals battled with Capitol Police and terrorized our legislative body. Smith saw other protestors, like herself, walk up Capitol Hill. She followed. The President remained in his quarters watching the peaceful rally descend towards hell, ignoring pleas for him to broadcast to his supporters to cease their acts and go home.

Smith then committed the criminal act of entering the Capitol building. She remained in the building for seconds, saw what others were doing, and quickly exited. Her life that day was immediately changed by what she participated in. She has received the scorn of others, lost her Hospice Care position, been very publicly prosecuted, and faces the uncertainties of her future. For the last 14 months, Smith has confronted what she did to herself and the wrongfulness of her participation. Having lost her Hospice Aide employment because of her arrest, Smith now cleans houses to financially survive, as she reflects on the patients she loved, laughed and cried with, and more importantly, those who may never see her tenderness. Diana Smith feels the pains of the lost love and strength she received from her patients. As the letters of support make clear, the care giver Smith, and those who may never receive her attention and warmth, are deeply impacted by

her offense. This, in particular, has had a heavy impact on Diana and constitutes demonstrable punishment that she has lived with since shortly after January 6, 2021.

In the meantime, those who stoked the passions of many good citizens go unpunished and continue with lies, they repeat and propagate for political gain. Others engage in revisionist history by claiming that the prosecuted protestors were merely Patriots who committed no wrong. Smith categorically rebukes this false claim. She will appear before this Court as a good and honest woman who committed a criminal act for which she is being prosecuted. She is extremely remorseful for what she did, and she will, in the eyes of millions of our citizenry, wear the title of "Insurrectionist". In the meantime, politicians who know that the claims of a stolen election are false, are either silent or echo the claims of Trump for their political profit. Apparently, none of them have read or been inspired by John F. Kennedy's book, "Profiles in Courage."

## II. SENTENCING GUIDELINES

Pursuant to §1B1.9 of the US Sentencing Guidelines, the sentencing guidelines do not apply to the defendant's sentencing since the count of conviction is a Class B misdemeanor.

## III. THE PRESENTENCE REPORT

With the exception of the probation officer's revised sentencing recommendation of January 12, 2022, Mrs. Smith has no objections to the presentence report.

## IV. THE APPLICABLE SENTENCING STANDARD

Well known to this Court, a district court must "impose a sentence sufficient but not greater than necessary" to comply with the purpose of sentencing set forth in 18 U.S.C. § 3553(a)(2). The purposes of sentencing include the need "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; "to afford adequate deterrence to criminal conduct"; "to protect the public from further crimes of the defendant"; and "to provide

the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner". 18 U.S.C. § 3553(a)(2)(A), (B), (C) and (D). The courts must also consider "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the kinds of sentences available"; and "the need to provide restitution to any victims of the offense". 18 U.S.C. § 3553(a)(1), (3), and (7).

V. **SENTENCING CONSIDERATIONS**

The 3553 factors to be considered at sentencing warrant and justify that the appropriate sentence in this case is probation.

a. **The History And Characteristics Of The Defendant**

Section 3553(a)(1) requires that a sentencing court examine the history and characteristics of each defendant that appears before it in order to impose a sentence that balances the offense with other relevant factors. The Supreme Court has recognized that "it has been 'uniform and constant in the federal judicial tradition' for the sentencing judge to consider every convicted person as an individual and every case as a unique study in human failings that sometimes mitigate … the crime and punishment to ensue." *United States v. Koon*, 518 U.S. 81, 113 (1996). We ask for the same consideration from this Court.

Until the time of her involvement in the activity charged in the Information, Diana Smith lived a quiet and unassuming life which was crime free and focused on her hospice work, her family, and her church group.

With Diana's prosecution began, her life changed. She has since that day suffered the collateral consequences of her offense. She has lost her job as a Hospice Care Aide, an occupation she excelled in. She now cleans homes. To Diana, this is certainly not demeaning work but is no replacement for the love, devotion and care she provided to the terminally ill. Although this Court

4

has received and reviewed letters from community members who know Diana Smith the best (Exhibit "A"), it is worth highlighting certain characteristics of Smith:

> Diana is a hard-working, genuine, deep-thinking individual. She is compassionate and caring. This was very evident in her position as a nurse's aide for hospice patients. Speaking of her job and duties, she always made it clear that every person deserves to be treated with dignity, no matter what their condition, because they are created by God. Diana is also open and teachable. She is always reflecting on her past to learn from it and asking for outside input. Brenda Hendricks

> I've met a few CNAs that parallel Diana's talent but none that have surpassed it. She is technically accomplished, safely providing personal care in a dignified and efficient manner and she is one of the most respectful, compassionate healthcare providers that I've worked with in my 40 years in the field… The highest compliment that I can pay Diana is that she was my first choice to care for my mother which she did impeccably. Theresa A. Hipp RN BSN MBA

> I have known Diana since early 2012 when she started attending a weekly Bible Study in our home with her future husband, Mark Smith. In this small group setting, it is easy to get to know each individual and observe how they think, act, and what type of person they are. It's easy to get to know through patterns and character traits. Diana is a kind hearted, moral, thoughtful, genuine, respectful, and gentle individual. Diana has been in our home on almost a weekly basis for approximately 10 years, at no point prior to the events of 1/6/21 or after, has Diana displayed anything but peaceful concern and love for our country. Diana is someone whom [I] trust and respect greatly and I have nothing but high regard for her. Thomas B. Hendricks

> Diana loves her country, family, and her God. She and I have had many opportunities to discuss God's leading in her life and where her giftedness would be best served. Diana is a compassionate individual and has been employed as a health care provider. She has close and very beneficial ties to many in our community through caring for their loved ones' aged parents. She has been active in mentoring at The Children's Home of Easton, where she has helped to guide, support, and encourage children. I can attest to her conversion of faith, her spiritual growth and maturity, and a moral character that is neither negative, divisive, nor in any way derogatory to her community or country. She is a very bright young woman of resilience and she shows concern for her fellow man's welfare and well-being…. I believe Diana has the talent, skill, and heart's passion to help people and make a difference in their lives…. She has genuinely showed repentance toward any wrong actions she

may have been involved with, and is very public and humble as to all consequences she is facing.  Pastor Corvin S. Seltzer Jr.

Quiet, positive, and respectful of her diverse coworkers, I witnessed the calming effect she had on the team. How they'd come to trust her in a way that's all too rare … I didn't just promote Diana once. I did it three times … She excelled with each new challenge…. Diana is not a single grainy snapshot taken by a surveillance camera. She's a caring, loving, kind, respectful, compassionate person, always willing to help a friend, a coworker, or a complete stranger.  Lorne Dixon

I have experienced an individual who shows up earlier than asked, works hard and carries themselves in a polite, respectable manner. In addition, Diana Smith is a family-person who has always presented themselves with level headedness and grace.  George Fox

Since her offense, Diana has shown extreme remorse for her conduct.  She has fully accepted responsibility.  She blames no one other than herself for where she stands today.  (See Smith letter at Exhibit "B").

The letters submitted Smith and others on her behalf help to draw a more complete picture of the woman to be sentenced than the Information filed in this case against her.  Respected by her community, religious strength of character, devotion to her church activities and religious instructions, self-less friend to patients and others – this background of Mrs. Smith must be considered in understanding that although this defendant has been convicted of a violation of federal law, she is truly a community asset who will, following sentencing, immediately once again contribute to a society from which she has partially self-withdrawn.  All these letters presented to the Court explore the attributes of a fine person who will rise again after sentencing.  She he has the will and determination to continue to be a strong contributing force within her community.  This will be her redemption.  There is no risk of recidivism.

b. **<u>Just Punishment</u>**

The PSR fully develops the facts that warrant the imposition of a term of probation. It has been repeatedly said by many courts that criminal justice in America consists of two goals, punishment and reformation. Diana has been and will continue to be punished for her offense but there is no need to pull her out of society and confine her. She has shown since her initial appearance that she can comply with supervision, remain crime free, and avoid criminal conduct. Therefore, should the Court grant a term of probation, there is great assurance in knowing that she can and will lead a life that is crime free. Excessive punishment in this case is not just punishment.

c. **<u>Need For Adequate Deterrence</u>**

The broad and very public prosecution of hundreds of our citizens certainly should and will serve as a deterrence to any level-headed person who would ever again contemplate a breach of the doors of our political institutions. A sentence of probation for this woman for the act attributed to her does not negatively impact on the goal of deterrence. General and specific deterrence are achieved by this sentence. Diana Smith pled guilty to her misdemeanor offense. She has expressed genuine remorse for her conduct. She has exhibited this remorse to those who know her best and who believe her words of contrition are meaningful and ring true.

To the extent that punishment deters others from committing crimes, a sentence in excess of that sought does nothing, it is submitted, to add further deterrence to others. The public filing of the charges against her, her very public prosecution, her conviction, sentencing, and financial hardship have served as evidence to the public of what may happen to those who violate the law in the manner that she did.

### d. The Requested Sentence Of Probation Avoids Unwarranted Disparities

This Court must consider the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Given the nature and characteristics of this defendant, and her conduct as compared with other defendants that have received probationary sentencing in related cases, a sentence other than probation would appear to be an unwarranted disparity in the other sentences imposed by other judges.

### e. Promote Respect For The Law

Unduly harsh sentences breed disrespect for the law. As the Supreme Court observed in *Gall*: "a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." *Gall*, 552 U.S. at 54 (quoting with approval the reasoning of the district court); see also *United States v. Deegan*, 605 F.3d 625, 655 (8th Cir. 2010 (Bright, J., dissenting) (observing that harsh federal punishment when compared to lenient state sentencing for the same criminal activity "promotes disrespect for the law and the judicial system."); *United States v. Ontiveros*, 07–CR–333, 2008 WL 2937539, at *3 (E.D. Wis. July 24, 2008) ("[A] sentence that is disproportionately long in relation to the offense is unjust and likewise fails to promote respect [for the law]."); Cf. *United States v. Irey*, 612 F.3d 1160, 1239 (11th Cir. 2010) (Hill, J., concurring) (noting that "[u]nwarranted sentencing disparity breeds disrespect for the rule of law …"); *United States v. Stern*, 590 F. Supp. 2d 945, 957 (N.D. Ohio 2008) ("Respect for the law is promoted by punishments that are fair, however, not those that simply punish for punishment's sake."). Thus, careful application of the § 3553(a) factors is imperative and pivotal in providing just punishment promoting respect for the law.

8

## VI. SENTENCING RECOMMENDATION

Diana Santos-Smith appears before this Court for sentencing as a humble woman, loved by her community, who committed an offense out of her character. She has taken responsibility for her transgression, blaming only herself. It is sad but true that taking responsibility for one's actions is a virtue that has gone missing in a great segment of our society. Diana recognizes the serious nature of her acts. The remaining question for this Honorable Court is what sentence should be imposed in a case such as this one. Even before the sentencing is completed, Mrs. Smith has become a pariah in segments of her community. However, as reinforced by those that know her, she has the true character to rebuild her life and restore the loving trust that others have placed in her. There is no doubt that Diana Smith will once again be recognized for her strengths and not be defined by this prosecution.

The redeemable qualities of this defendant at this time in her life present the Court with the ability to impose a term of probation that will reflect the Court's thoughts that Mrs. Smith does not pose any threat to society that requires her confinement and that her immediate return to the health care industry is a real possibility. This sentence does not diminish the seriousness of the offense but takes into consideration the true nature of this woman, the long and distinguished life she has led, her dedication to the care of others. All these highlight Diana Smith as an individual who has much good to return to society.

Thus, the question for this noble court is what sentence is necessary to satisfy the factors required to be considered by the Court. A reasoned and balanced sentence is supported by the facts of this case. A sentence of probation would take into consideration the seriousness of the offense, punishment, and adequate deterrence.

Each defendant that appears before this Court is an individual who must be judged within the framework of the sentencing factors and tempered by the vision as to whether a defendant is redeemable with the real chance that they can be rehabilitated and contribute to society. This Court can be confidant that granting probation serves the important needs of both the community and the defendant. Diana understands that she brought upon herself a cloud on her reputation and character. Confinement will only darken that cloud and restrict her ability to rise above the count of conviction. The question then becomes what sentence is "sufficient but not greater than necessary" to achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2).

Under the circumstances of this case, we respectfully request the Court to impose a sentence of probation. Such a sentence is an appropriate sentence in this case. Such a sentence would meet the stated purposes of federal sentencing. The future of Diana Santos-Smith is humbly presented to this Court for proper consideration.

Respectfully Submitted:

Dated: March 4, 2022        By: /s/ Robert E. Goldman
Robert E. Goldman, Esquire
535 Hamilton Street, Suite 302
Allentown, PA 18101
(610) 841-3876
reg@bobgoldmanlaw.com
Counsel for Defendant Diana Santos-Smith

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Criminal No. 1:21-cr-00271-EGS-2 |
| v. | : | |
| | : | |
| DIANA SANTOS-SMITH | : | Honorable Emmet G. Sullivan |

## CERTIFICATE OF SERVICE

I, Robert E. Goldman, Esquire, do hereby certify that a true and correct copy of the foregoing *Defendant's Sentencing Memorandum* was served upon the following individual(s) in the manner and at the address(es) indicated below:

**Via ECF**
AUSA Sean P. Murphy
United States Attorney's Office
Torre Chardón, Suite 1201
350 Carlos Chardón Street
San Juan, PR 00918
*Sean.Murphy@usdoj.gov*


Dated: March 4, 2022          By: _____
                                  Robert E. Goldman, Esquire
                                  PA I.D. # 25340
                                  535 Hamilton Street, Suite 302
                                  Allentown, PA 18101
                                  (610) 841-3876
                                  reg@bobgoldmanlaw.com
                                  Counsel for Defendant Diana Santos-Smith